UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------
ANGEL JENKINS, on behalf of herself and all others similarly situated,

Plaintiff,

-against-

Civil Action No.: _________

LUXI GROUP, LLC and UNITED TIME GROUP, LLC, d/b/a ASHFORD.COM,

Defendants.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND RELATED STATE AND CITY LAW**
**JURY TRIAL DEMANDED**

Plaintiff ANGEL JENKINS ("Plaintiff" or "Ms. Jenkins"), on behalf of herself and all others similarly situated, by and through her counsel, brings this Class Action Complaint against Defendants LUXI GROUP, LLC and UNITED TIME GROUP, LLC, d/b/a ASHFORD.COM (collectively, "Defendants" or "Ashford.com"), and alleges as follows based upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

## INTRODUCTION

1. This is a civil rights action brought under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"), arising from Defendants' failure to design, construct, maintain, and operate the commercial website located at www.ashford.com ("the Website" or "Ashford.com") in a manner that is fully accessible to and independently usable by Plaintiff and other blind or visually impaired persons who rely on screen-reading software to access the internet.

2. The internet has become an indispensable resource for shopping, commerce, and economic participation in modern life. For blind and visually impaired consumers, accessible websites are not a convenience — they are a necessity. Screen-reading software such as NVDA (NonVisual Desktop Access) and JAWS (Job Access With Speech) convert on-screen text and navigational elements into audible speech or Braille output, enabling blind users to navigate, evaluate products, and transact on commercial websites. When a website's code is not built or maintained in conformance with established accessibility standards — specifically the Web Content Accessibility Guidelines ("WCAG") promulgated by the World Wide Web Consortium ("W3C") — screen-reading software fails to function properly, and blind users are denied equal access to the information and commercial opportunities the website provides.

3. Ashford.com is one of the largest and most established discount retailers of authentic brand-name luxury watches and sunglasses in the United States, operating since the mid-1990s and offering genuine products at prices reported to be forty to eighty percent below manufacturer suggested retail prices ("MSRP"). Ashford.com carries over fifty premium watch and accessory brands, including Bulova, Citizen, Hamilton, Invicta, Kenneth Cole, Luminox, Maurice Lacroix, Mido, Movado, Orient, Technomarine, and Tissot, among others. Ashford.com also offers authentic designer sunglasses, including the Oakley Men's Oil Rig Polarized Sunglasses, Model OO9081-26-203-28, listed on the Website at $59.99 — a savings of over $150.00 per pair from the MSRP of $213.00, representing a discount of approximately seventy-two percent. Ashford.com provides a comprehensive price-match guarantee, a multi-year warranty on all watches, and a stated return and exchange policy, making it uniquely trustworthy for luxury goods purchases at discount.

4. Plaintiff Angel Jenkins is a legally blind resident of New York County who suffers from Retinitis Pigmentosa, a progressive and degenerative eye disease causing severe and permanent bilateral vision loss that satisfies the criteria for legal blindness. Exhibit A Ms. Jenkins relies on NVDA and JAWS screen-reading software to access the internet and to engage in commercial transactions online. Ms. Jenkins is a regular purchaser of luxury watches and sunglasses for personal use and as gifts, and she has specifically sought to use Ashford.com to locate, evaluate, and purchase products — including the Oakley OO9081-26-203-28 sunglasses and luxury timepieces from the Bulova, Citizen, Hamilton, Invicta, and Movado collections — because Ashford.com offers unique pricing, authenticity guarantees, and brand selection unavailable at comparable discount prices through any fully accessible competing retailer.

5. Ms. Jenkins attempted to access and use the Website on at least three separate occasions — on or about March 17, 2026; March 19, 2026; and May 10, 2026 — and on each occasion she was prevented from independently browsing products, evaluating product details, and completing purchases due to pervasive and systemic accessibility barriers in the Website's code. These barriers are not minor or incidental; they affect at least one thousand nine hundred and eighty-five (1,985) pages of the Website, as confirmed by an automated accessibility audit conducted using SortSite version 47 ("SortSite audit") on June 4, 2026, which tested four thousand eight hundred and fifty-four (4,854) pages and files of www.ashford.com. A page-specific audit of the Oakley Men's Sunglasses product page (https://www.ashford.com/products/oakley-oo9081-26-203-28) using WAVE (Web Accessibility Evaluation Tool by WebAIM) revealed twenty-seven (27) distinct Errors, twenty-six (26) Contrast Errors, and thirty (30) Alerts, yielding an AIM accessibility score of only 4.7 out of 10.

6. The barriers Ms. Jenkins encountered include, without limitation: images lacking accessible alternative text throughout the Website, including on the Oakley product page and on all brand collection pages; links without accessible names throughout virtually all pages of the Website; broken ARIA references causing screen reader errors and malfunctions on the Oakley product page; invalid aria-owns attributes referencing non-existent element IDs across 1,985 pages; empty and missing form labels on product pages preventing selection of product options; improperly nested interactive elements on the homepage causing unpredictable screen reader behavior; structural markup errors causing NVDA to fail to voice list content and page structure; data tables lacking proper header markup on policy pages; and numerous other failures to conform with the requirements of WCAG 2.1 Success Criteria. The cumulative effect of these barriers is to render the Website essentially inaccessible to blind users navigating with NVDA or JAWS screen-reading software. Exhibit B

7. Because of these barriers, Ms. Jenkins was unable to: locate the Oakley OO9081-26-203-28 sunglasses and evaluate their features, colors, and specifications; navigate the Bulova, Citizen, Hamilton, Invicta, and Movado brand collection pages to compare timepieces; determine product options and variants through the product page form controls; verify shipping, warranty, and return terms through the Website's policy pages; and complete any purchase on the Website. Ms. Jenkins was denied the same opportunity to evaluate and purchase products that sighted users are afforded, in direct violation of her rights under the ADA, the NYSHRL, and the NYCHRL.

8. Defendants have had constructive—and indeed actual—notice of the ADA's requirements that commercial websites be accessible to individuals with disabilities for many years prior to the filing of this Complaint. The United States Department of Justice ("DOJ") has issued accessibility guidance for websites of places of public accommodation since 1996, reaffirmed in multiple

technical assistance documents, and most recently in formal guidance issued in 2022. The Web Content Accessibility Guidelines 2.1 ("WCAG 2.1") have been the widely recognized industry standard for digital accessibility since 2018. Hundreds of ADA website accessibility lawsuits are filed each year in the Southern and Eastern Districts of New York alone. A commercial e-commerce operator of Defendants' scale and sophistication—operating www.ashford.com as a major national retail platform since the mid-1990s—has had ample time and opportunity to bring the Website into compliance with established accessibility standards but has failed and/or refused to do so. [1]

9. Plaintiff seeks, on behalf of herself and a Class of similarly situated legally blind and visually impaired individuals: (i) a permanent injunction requiring Defendants to make www.ashford.com fully accessible to and independently usable by blind and visually impaired persons in conformance with WCAG 2.1 Level AA guidelines; (ii) compensatory damages for violations of the NYSHRL and NYCHRL; (iii) civil penalties and punitive damages as permitted by the NYCHRL; (iv) attorneys' fees, litigation expenses, and costs; and (v) such other and further relief as the Court deems just and proper.

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as the claims arise under Title III of the Americans with Disabilities Act. Plaintiff brings this suit in the Southern District of New York because Defendant Luxi Group, LLC is headquartered in this District, and because a substantial part of the events giving rise to the

[1] Moreover, Defendants had **actual notice** of their accessibility obligations through prior litigation. On October 13, 2023, United Time Group, LLC was sued in this District for violations of the ADA based on the same website accessibility barriers alleged here. *See* ***Ellen Elizabeth Tarr v. United Time Group, LLC, 23-cv-09051 (S.D.N.Y. 2023)***. That matter was resolved approximately sixty days later, presumably with a commitment to remediate the Website within a reasonable remediation window—commonly no more than twenty-four months. That period has now elapsed, yet the Website remains inaccessible, demonstrating Defendants' continued failure to comply with their ADA obligations despite explicit notice and prior opportunity to cure.

claims — including the operational, administrative, and digital accessibility decision-making governing the Ashford.com website — occurred within this District.

11. Plaintiff has standing to bring this action, including prospective injunctive relief, because: (i) she has suffered a concrete and particularized past injury on each of three separate visits to www.ashford.com (March 17, 2026; March 19, 2026; and May 10, 2026) when accessibility barriers prevented her from locating, evaluating, and purchasing specific products she sought; (ii) it is reasonable to infer that the discriminatory conduct will continue, because the SortSite audit conducted on June 4, 2026 confirms that the barriers persist as of the date of this Complaint with no meaningful remediation; and (iii) it is reasonable to infer that Ms. Jenkins intends to return to www.ashford.com upon remediation of the accessibility barriers, because she has visited the Website three times in under two months, has an ongoing and specific desire to purchase the Oakley OO9081-26-203-28 sunglasses and luxury timepieces from the Bulova, Citizen, Hamilton, Invicta, and Movado collections, and no comparable discount retailer with equivalent authenticity guarantees and brand selection offers a fully accessible alternative. See Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75-76 (2d Cir. 2022) (standing established where "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location").

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as the claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. This Court has personal jurisdiction over Defendants because they conduct substantial business within New York State and within this District, purposefully direct their commercial activities toward consumers in New York, and derive significant revenue

from goods sold and shipped into this District through the Ashford.com website. Defendant Luxi Group, LLC is headquartered in this District, and Defendant United Time Group, LLC conducts continuous and systematic business activities here through its interactive e-commerce platform at www.ashford.com.

13. This Court has supplemental jurisdiction over Plaintiff's state and city law claims — brought under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. — pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal ADA claims that they form part of the same case or controversy.

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant Luxi Group, LLC resides in this District, and because a substantial part of the events or omissions giving rise to the claims — including the operation, administration, and digital accessibility decisions governing the Ashford.com website — occurred within this District.

## PARTIES

15. Plaintiff ANGEL JENKINS is a natural person and a resident of New York County, New York, residing at 228 West 124th Street, Apt. #23, New York, New York 10027. Plaintiff has been diagnosed with Retinitis Pigmentosa, a progressive and degenerative retinal disease causing severe and permanent bilateral vision loss that satisfies the legal criteria for blindness. Plaintiff was examined by Dr. Robert Friedman, M.D., O.D., of Mount Sinai Morningside Eye Center, located at 1001 Park Avenue, New York, New York 10028, on April 12, 2025. Dr. Friedman completed an OCFS-4599 Report of Legal Blindness identifying Plaintiff's condition under Condition #3: "Blindness, better eye, with visual field limitation less than 20 degrees." Plaintiff is registered with the New York State Commission for the Blind under Registration No. A.19038. Plaintiff is a

"person with a disability" within the meaning of the ADA, 42 U.S.C. § 12102, the NYSHRL, N.Y. Exec. Law § 292, and the NYCHRL, N.Y.C. Admin. Code § 8-102. Plaintiff relies on NVDA (NonVisual Desktop Access) and JAWS (Job Access With Speech) screen-reading software to access the internet, read electronic content, and engage in commercial transactions online, including shopping for products on e-commerce websites.

16. Defendant LUXI GROUP, LLC is a New York limited liability company with its principal place of business at 680 Fifth Avenue, 13th Floor, New York, New York 10019. Luxi Group, LLC is the parent and controlling entity of United Time Group, LLC. Luxi Group, LLC is the current owner of the ASHFORD.COM trademark and exercises managerial, financial, and operational control over United Time Group, LLC and the Ashford.com website. Luxi Group, LLC acquired Ashford.com in 2007 and has since directed and controlled all material aspects of the Website's operations, including its design, development, content, and digital accessibility policies. At all relevant times, Luxi Group, LLC jointly participated in, directed, benefited from, and was responsible for the policies, practices, and digital operations of the Ashford.com website. Luxi Group, LLC is a "public accommodation" within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7), the NYSHRL, and the NYCHRL, as its commercial website, Ashford.com, constitutes a place of public accommodation or a sales establishment open to the general public.

17. Defendant UNITED TIME GROUP, LLC is a Delaware limited liability company with operational and fulfillment facilities at 30 Sherwood Lane, Suite 11, Fairfield, New Jersey 07004. United Time Group, LLC operates the Ashford.com e-commerce website under the d/b/a "Ashford.com." The Ashford.com warranty page expressly states: "Ashford.com is a DBA of United Time Group, LLC (UTG)." United Time Group, LLC conducts nationwide retail sales of luxury watches, sunglasses, and related accessories through the Ashford.com website and derives

substantial revenue from consumers nationwide, including consumers in the State of New York and within this District. At all relevant times, United Time Group, LLC jointly participated in, directed, benefited from, and was responsible for the policies, practices, and digital operations of the Ashford.com website. United Time Group, LLC is a "public accommodation" within the meaning of Title III of the ADA, the NYSHRL, and the NYCHRL.

18. Defendants Luxi Group, LLC and United Time Group, LLC collectively own, operate, control, and/or maintain the commercial website located at www.ashford.com ("Ashford.com"). Luxi Group, LLC is a New York limited liability company with its principal place of business at 680 Fifth Avenue, 13th Floor, New York, New York 10019, and is the parent and controlling entity of United Time Group, LLC. United Time Group, LLC is a Delaware limited liability company with operational facilities in New Jersey and conducts nationwide retail sales under the d/b/a "Ashford.com." Luxi Group, LLC is the current owner of the ASHFORD.COM trademark and exercises managerial, financial, and operational control over United Time Group, LLC and the Ashford.com website. At all relevant times, Defendants jointly participated in, directed, benefited from, and were responsible for the policies, practices, and digital operations of the Ashford.com website.

## FACTUAL BACKGROUND

### A. Plaintiff's Visual Impairment and Use of Screen-Reading Software

19. Plaintiff Angel Jenkins suffers from Retinitis Pigmentosa, a genetic and progressive degenerative disease affecting the retina, which causes the gradual death of photoreceptor cells and results in severe bilateral vision loss. Plaintiff's condition has progressed to the point at which her visual field in her better eye is limited to less than twenty degrees — a condition formally

classified as legal blindness under the criteria established by the New York State Office of Children and Family Services and the Social Security Administration. Dr. Robert Friedman, M.D., O.D., of Mount Sinai Morningside Eye Center, who examined Plaintiff on April 12, 2025, completed an OCFS-4599 Report of Legal Blindness confirming Plaintiff's diagnosis and certifying her status as legally blind under Condition #3: "Blindness, better eye, with visual field limitation less than 20 degrees." Plaintiff is registered with the New York State Commission for the Blind under Registration No. A.19038. Plaintiff's visual impairment substantially limits the major life activity of seeing, within the meaning of the ADA, 42 U.S.C. § 12102(1).

20. Because of her visual impairment, Plaintiff is unable to access visual content on computer screens without the assistance of screen-reading software that converts text and navigational elements to audible speech or Braille output. Plaintiff primarily uses NVDA (NonVisual Desktop Access), a free and open-source screen reader widely used by the blind community, as well as JAWS (Job Access With Speech), one of the most widely used commercial screen readers for Windows. These programs interact with a web browser and with the underlying HTML, ARIA (Accessible Rich Internet Applications), and CSS code of websites to voice the structure, content, and interactive elements of web pages. When websites are constructed without adherence to established accessibility standards — including the Web Content Accessibility Guidelines 2.1 ("WCAG 2.1") published by the World Wide Web Consortium ("W3C") — NVDA and JAWS cannot properly interpret and convey the website's content and controls, rendering the site effectively unusable for blind persons.

21. Screen-reading software such as NVDA and JAWS relies upon specific coding practices to function correctly. Images must have descriptive alternative text ("alt text") so that the screen reader can convey the image's content to the user; form controls such as dropdown menus,

checkboxes, and radio buttons must have properly associated labels so that the screen reader can announce their purpose; links must have meaningful accessible names so that the user can understand where a link leads; ARIA attributes must reference valid and existing element IDs so that the screen reader can correctly announce the roles, states, and properties of interactive elements; and document structure — including headings, lists, and data tables — must be properly marked up so that the screen reader can convey the logical organization of the page. Failures in any of these coding practices translate directly into barriers for blind users who rely on screen-reading software to navigate and transact on websites.

**B. Defendants' Website and Products**

22. The Ashford.com website, located at www.ashford.com, is a major national e-commerce platform that has operated since the mid-1990s, making it one of the longest-established online luxury goods retailers in the United States. Ashford.com specializes in the online retail sale of authentic brand-name luxury watches, designer sunglasses, and accessories at significant discounts from MSRP. Defendants represent that Ashford.com offers products at prices forty to eighty percent below MSRP, with a comprehensive price-match guarantee and multi-year warranties on all watch purchases. Ashford.com carries products from over fifty premium brands, including Bulova, Citizen, Hamilton, Invicta, Kenneth Cole, Luminox, Maurice Lacroix, Mido, Movado, Orient, Technomarine, and Tissot, among others.

23. Ashford.com sells authentic products — an important distinction from third-party marketplace sellers on platforms such as eBay or Amazon, where authenticity is not guaranteed. The combination of deep discounts, authenticity guarantees, multi-year warranties, comprehensive brand selection, and a stated price-match policy makes Ashford.com unique among accessible discount luxury goods retailers. Defendants operate Ashford.com as a "place of public

accommodation" within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(E), as a "sales establishment" that offers goods to the general public through its interactive e-commerce platform.

24. Among the specific products available on Ashford.com and sought by Plaintiff are: (i) the Oakley Men's Oil Rig Polarized Sunglasses, Model OO9081-26-203-28, listed on the Website at $59.99, representing a discount of approximately seventy-two percent from the MSRP of $213.00, featuring polarized lenses, black frame, grey lens, and 100% UV protection, with the product page located at https://www.ashford.com/products/oakley-oo9081-26-203-28; and (ii) men's and women's luxury timepieces from the Bulova, Citizen, Hamilton, Invicta, and Movado collections available on the Website at discounts of forty to sixty percent off MSRP, with brand collection pages at https://www.ashford.com/collections/bulova, /citizen, /hamilton, /invicta, and /movado, respectively. These products are available on Ashford.com at prices not matched by any major accessible online retailer, and the Oakley OO9081-26-203-28 at the $59.99 price point was not available through competing retailers at the time of Ms. Jenkins' visits.

25. Plaintiff Angel Jenkins is familiar with Ashford.com's product catalog, pricing structure, and discount model. Plaintiff regularly purchases luxury watches and designer sunglasses—both as gifts and for personal use—through other retail establishments, often at prices two to three times higher than the discounted prices offered on Ashford.com. Plaintiff selected Ashford.com as her preferred purchasing platform for these products because: (a) Ashford.com's discount pricing—such as the Oakley OO9081-26-203-28 sunglasses offered at $59.99, approximately seventy-two percent below MSRP—is not matched by any major accessible retailer; (b) Ashford.com's authenticity guarantee and multi-year warranty for watches provide assurances that third-party marketplace sellers on Amazon and eBay cannot offer; (c) Ashford.com is one of the few authorized online retailers for the specific brands Plaintiff sought, ensuring product authenticity

and eligibility for manufacturer support; and (d) the combination of deep discounts, authenticity guarantees, comprehensive brand selection, and multi-year warranty is unique to Ashford.com among discount luxury watch retailers. No comparable discount retailer with equivalent authenticity protections, pricing, and brand selection currently offers a fully accessible website that would serve as an equivalent alternative.

**C. Defendants' Notice of ADA Website Accessibility Requirements**

26. The obligation of places of public accommodation to make their websites accessible to individuals with disabilities has been recognized under the ADA since at least 1996, when the United States Department of Justice ("DOJ") issued its first guidance affirming that Title III of the ADA applies to commercial websites. The DOJ's position has been consistently affirmed and strengthened over the following decades. In March 2022, the DOJ issued formal guidance expressly confirming that websites operated by places of public accommodation must comply with the ADA and recommending adherence to the WCAG 2.1 Level AA guidelines as the relevant technical standard. The WCAG 2.1 guidelines, published by the World Wide Web Consortium ("W3C"), have been the widely recognized industry standard for web accessibility since their publication in June 2018 and have been formally adopted or referenced by federal agencies, state governments, and accessibility standards bodies throughout the United States and internationally.

27. The volume of ADA website accessibility litigation in the federal courts of New York has been substantial and well-publicized for many years. The Southern District of New York is among the most active jurisdictions in the country for ADA website accessibility lawsuits, with hundreds of such complaints filed each year. Any e-commerce operator of Defendants' scale, sophistication, and duration of operation has had actual or constructive notice of the ADA's website accessibility requirements — and of the substantial litigation risk associated with inaccessible websites — for

well over a decade prior to the filing of this Complaint. Defendants cannot credibly claim unawareness of their obligations under the ADA with respect to the accessibility of the Ashford.com website. [2]

28. Defendants have operated Ashford.com as a major national e-commerce platform since the mid-1990s — nearly three decades — and have had ample time and more than sufficient resources to bring the Website into conformance with WCAG 2.1 Level AA guidelines. The pervasive and systemic nature of the accessibility barriers documented by the SortSite audit — affecting one thousand nine hundred and eighty-five (1,985) or more of the Website's pages — is inconsistent with any good-faith effort to address website accessibility. The breadth and persistence of the barriers across virtually the entire Website reflects either a deliberate failure to comply with the requirements of the ADA and applicable state and city law, or a grossly negligent disregard of those obligations. The persistence of these barriers despite Defendants' years of operation as a major national e-commerce platform and their constructive knowledge of applicable legal requirements reflects either a deliberate failure to comply with or a grossly negligent disregard of their obligations under Title III of the ADA and applicable state and city law.

## D. Plaintiff's Attempts to Access the Website and Barriers Encountered

29. On or about March 17, 2026, Ms. Jenkins accessed www.ashford.com from her home computer in New York County, using the NVDA screen-reading software with her web browser. As part of her ordinary online-security practices, Ms. Jenkins uses a VPN when accessing the

[2] Moreover, Defendants had **actual notice** of their accessibility obligations through prior litigation. On October 13, 2023, United Time Group, LLC was sued in this District for violations of the ADA based on the same website accessibility barriers alleged here. *See* ***Ellen Elizabeth Tarr v. United Time Group, LLC, 23-cv-09051 (S.D.N.Y. 2023)***. That matter was resolved approximately sixty days later, presumably with a commitment to remediate the Website within a reasonable remediation window—commonly no more than twenty-four months. That period has now elapsed, yet the Website remains inaccessible, demonstrating Defendants' continued failure to comply with their ADA obligations despite explicit notice and prior opportunity to cure.

internet to protect her identity and financial information following an attempted cyber-intrusion affecting multiple residents in her building; the VPN does not alter or interfere with the operation of her screen reader or her ability to access websites. Ms. Jenkins navigated to the Website's sunglasses section with the specific intent of locating, evaluating, and purchasing the Oakley Men's Oil Rig Polarized Sunglasses, Model OO9081-26-203-28, which she understood to be listed on the Website at $59.99. Upon accessing the Website, Ms. Jenkins's screen reader encountered the following accessibility barriers that prevented her from independently navigating the Website and completing her intended purchase: On the homepage, her screen reader announced empty link labels—voicing "link" with no destination description—for numerous navigation links throughout the page, making it impossible for her to understand the Website's navigation structure or to identify where each navigation link would direct her. When she attempted to navigate to the Oakley product page (https://www.ashford.com/products/oakley-oo9081-26-203-28), the images of the sunglasses were either skipped entirely by her screen reader (where alt attributes were absent) or her screen reader read aloud raw image file-name strings rather than meaningful product descriptions, depriving Ms. Jenkins of any information about the sunglasses' appearance, color, style, or features. The product page contained six (6) linked images of the sunglasses—linked to additional product views—for which her screen reader announced empty or absent alt text, providing no information about the sunglasses from any angle. Four (4) empty form labels on the product page meant that the size, color, and option selectors were not announced by her screen reader, leaving her entirely unable to determine what she was selecting when attempting to configure her order. Seven (7) broken ARIA references on the product page caused her screen reader to announce error messages and fail to convey the purpose, role, or state of interactive elements. Site-wide aria-owns attributes referenced non-existent element IDs, causing NVDA to

emit error tones rather than voicing navigation landmarks throughout her session. Unable to evaluate the sunglasses or configure a purchase, Ms. Jenkins was forced to terminate her session without completing any transaction.

30. On or about March 19, 2026, two days after her initial visit, Ms. Jenkins returned to www.ashford.com using NVDA, this time navigating to the luxury watch collections with the specific intent of browsing and comparing timepieces from the Bulova, Citizen, Hamilton, Invicta, and Movado collections available at forty to sixty percent off MSRP. On each of the brand collection pages she visited — including https://www.ashford.com/collections/bulova, /citizen, /hamilton, /invicta, and /movado — the images of the watches lacked accessible names entirely, in violation of WCAG 2.1 Success Criterion 1.1.1 (Non-text Content), causing NVDA to either read aloud file-name-derived text such as the watch model number as an unintelligible string, or to skip the images entirely; as a result, Ms. Jenkins had no information whatsoever about the appearance, style, dial color, band material, or distinguishing features of any of the watches she sought to evaluate. On the brand collection pages, list items appeared outside of proper ordered or unordered list parent containers on approximately 1,967 pages, causing NVDA to fail to announce them as list content and preventing Ms. Jenkins from understanding the page structure and navigating among product listings. Throughout the collection pages, links lacked accessible names in violation of WCAG 2.1 Success Criteria 2.4.4 and 4.1.2, causing NVDA to announce "link" with no destination text, making navigation among products and pages effectively impossible. The aria-owns attributes on approximately 1,985 pages — including all collection pages — referenced non-existent element IDs ("predictive-search-results" and "country-results"), causing NVDA to malfunction repeatedly when reading page landmarks throughout Ms. Jenkins's browsing session. An element with role=button was nested inside another element with role=button on the homepage,

in violation of HTML5 and WCAG 4.1.2, causing NVDA to behave unpredictably and announce incomplete control information when Ms. Jenkins attempted to use the homepage search function. Brand logo images on the shop-all-brands page used brand names ("DeLaCour," "Dsquared2," "Levi's," "Max&Co.," "Q&A") as alt text attributes, causing NVDA to read aloud brand names as if they were meaningful image descriptions rather than substitute text for visual logos. Ms. Jenkins was unable to identify, compare, or evaluate any of the watch products she sought, and she could not initiate a purchase.

31. On or about May 10, 2026, Ms. Jenkins made a third attempt to access www.ashford.com, specifically hoping that the barriers she had encountered during her first two visits had been remediated. She returned to the Oakley product page and then attempted to browse the men's and women's watch collections. She encountered the same barriers she had experienced on March 17 and March 19 — including absent image alt text, empty form labels, broken ARIA references, invalid aria-owns attributes, and inaccessible navigation links — confirming that no meaningful remediation had taken place in the intervening weeks. On this visit, she specifically attempted to use the Website's search function to locate the Oakley OO9081-26-203-28 sunglasses, but the search results page contained the same broken ARIA references and unlabeled images that she had previously encountered, preventing her from reviewing the search results. She consulted the privacy policy and shipping policy pages in an attempt to independently verify the warranty and return terms before making a purchase, but those pages contained data tables without properly marked th header elements, in violation of WCAG 2.1 Success Criterion 1.3.1 and Failure Criterion F91, causing her screen reader to fail to convey the structure of the warranty and shipping information tables; she was accordingly unable to independently verify the warranty terms, return policy, or shipping details she needed to feel confident proceeding with a purchase. She also

discovered that 186 pages on the Website had links with empty string href/src attributes, and that the homepage contained a broken same-page anchor link (id=swym-wishlist) that caused her screen reader to announce navigation errors. Ms. Jenkins confirmed that no meaningful remediation had been undertaken, and she was again unable to complete any purchase on the Website. She remains prepared and willing to return to www.ashford.com immediately upon remediation of the accessibility barriers, because the Oakley OO9081-26-203-28 sunglasses remain listed on the Website at the same discounted price, the Bulova, Citizen, Hamilton, Invicta, and Movado collections she sought to browse remain available, and no accessible alternative retailer offers the same combination of deep discounts, authenticity guarantees, multi-year warranties, and brand selection that is uniquely available through Ashford.com.

**Audit Methodology**

32. Two separate accessibility audits of www.ashford.com were conducted on June 4, 2026. The first audit was performed using SortSite version 47 ("SORT-SITE-47"), an automated web accessibility validation tool that conducts comprehensive multi-page audits of websites across multiple screen reader and browser combinations, including NVDA with Chrome, Firefox, and Edge; JAWS with Chrome, Firefox, and Edge; and VoiceOver with macOS and iOS. The SortSite audit tested four thousand eight hundred and fifty-four (4,854) pages and files of www.ashford.com, with eight thousand two hundred and one (8,201) pages remaining untested when the audit was stopped, indicating a website of substantial size and complexity. The SortSite audit identified accessibility issues across one thousand nine hundred and eighty-five (1,985) pages. The site quality report confirmed: 1,995 pages with quality issues; 1,985 pages with broken links or errors; 1,985 pages with accessibility problems; 9 pages with browser-specific issues; and 1,988 pages with W3C standards issues. The second audit was performed using WAVE (Web Accessibility Evaluation Tool by WebAIM), a page-specific evaluation tool widely used by

accessibility professionals. The WAVE audit was conducted on the Oakley Men's Sunglasses product page at https://www.ashford.com/products/oakley-oo9081-26-203-28 and revealed twenty-seven (27) distinct Errors, twenty-six (26) Contrast Errors, thirty (30) Alerts, and an AIM accessibility score of 4.7 out of 10 — reflecting a website substantially below any acceptable standard of accessibility.

**E. Barriers Encountered by Plaintiff**

33. The SortSite audit, the WAVE audit, and Plaintiff's own direct experience on each of her three visits collectively document the following specific accessibility barriers on www.ashford.com, all of which directly impeded Ms. Jenkins's ability to locate, evaluate, and purchase the products she sought. Each barrier is described below with reference to the applicable WCAG 2.1 Success Criterion or Failure Code, the scope of the barrier across the Website, Ms. Jenkins's specific encounter with the barrier during her visits, what NVDA announced or failed to announce as a result, and the specific impact on her ability to complete her intended purchase:

34. Image Elements Missing Accessible Names (WCAG 2.1 Success Criterion 1.1.1, Failure F65) — Approximately 1,985 pages of www.ashford.com contain img elements that lack accessible alternative text, constituting a violation of WCAG 2.1 Success Criterion 1.1.1 (Non-text Content), which requires that all non-text content be provided with a text alternative that serves the equivalent purpose. This barrier was encountered by Ms. Jenkins on every page she visited, including the Oakley Men's Sunglasses product page and all five brand collection pages (Bulova, Citizen, Hamilton, Invicta, and Movado) she visited on March 17 and March 19, 2026. On the Oakley product page, the primary product image and six linked supplemental images of the sunglasses — showing the sunglasses from different angles and in different use contexts — either had absent alt attributes or file-name-derived alt text strings; when Ms. Jenkins attempted to review

the product images, NVDA either skipped over them silently or read aloud raw file-name strings such as "oakley-oo9081-26-203-28-jpg" or similar alphanumeric identifiers, providing Ms. Jenkins with no information about the appearance, color, style, polarization, or features of the sunglasses. On the brand collection pages, watch product images similarly lacked accessible names, causing NVDA to skip them entirely or read unintelligible file-path strings; as a result, Ms. Jenkins was unable to form any visual impression of the hundreds of timepieces she sought to evaluate and compare. This barrier directly and completely prevented Ms. Jenkins from evaluating the products she visited the Website to purchase, because for a legally blind user relying on a screen reader, alt text is the sole means of receiving the information conveyed by product images.

35. Placeholder Alt Text Containing Brand Names Rather Than Meaningful Descriptions (WCAG 2.1 Success Criterion 1.1.1, Failure F30) — On the shop-all-brands page, alt attributes on brand logo images contained brand names — including "DeLaCour," "Dsquared2," "Levi's," "Max&Co.," and "Q&A" — as placeholder-style alt text, in violation of WCAG 2.1 Failure F30, which provides that using a text alternative that is not a replacement for the non-text content constitutes a failure to satisfy Success Criterion 1.1.1. Ms. Jenkins encountered this barrier on March 19, 2026, when she attempted to navigate the shop-all-brands page to locate the specific brand collections she sought to browse. When NVDA read the alt text on the brand logo images, it announced the brand names as if they were descriptive image captions — for example, voicing "image: DeLaCour" — providing no useful visual context about the logo's appearance, color scheme, or presentation. While brand names provide some contextual information, the use of bare brand names as alt text for visual logos fails to satisfy WCAG 1.1.1 because the alt text is not the text-equivalent of the image content itself but rather a placeholder or label for a decorative or

informational graphic. This barrier contributed to Ms. Jenkins's inability to efficiently navigate the brand directory and locate the specific collections she sought.

36. Links Missing Accessible Names (WCAG 2.1 Success Criteria 2.4.4, 2.4.9, 4.1.2, Failure F89) — Approximately 1,985 pages of www.ashford.com contain hyperlinks that lack accessible names, constituting violations of WCAG 2.1 Success Criterion 2.4.4 (Link Purpose — In Context), which requires that the purpose of each link be determinable from the link text alone or from the link text together with its surrounding context; Success Criterion 2.4.9 (Link Purpose — Link Only), requiring that the purpose of each link be identifiable from the link text alone; and Success Criterion 4.1.2 (Name, Role, Value), requiring that the name and role of user interface components be programmatically determinable. This barrier was pervasive throughout every page Ms. Jenkins visited on all three occasions. On the homepage and on each brand collection page she visited, NVDA announced navigation links as simply "link" — with no accompanying destination text, no surrounding context, and no accessible name of any kind — making it completely impossible for Ms. Jenkins to determine where any given link would take her. As a result, Ms. Jenkins was unable to navigate the Website's menu structure, follow links from collection pages to individual product pages, use pagination links to view additional products, or navigate between sections of the Website in any purposeful manner. This barrier alone would be sufficient to render the Website effectively unusable for a blind screen reader user, because purposeful navigation through hyperlinks is the primary means by which users traverse websites and locate specific content.

37. Non-Descriptive "Learn More" Link Text (WCAG 2.1 Success Criteria 2.4.4, 2.4.9, Failure F63) — On the Website's homepage, at approximately Line 31439, a hyperlink with the visible text "Learn More" was present without any surrounding context adequate to identify the link's purpose or destination, in violation of WCAG 2.1 Failure F63. When Ms. Jenkins's NVDA screen

reader reached this link, it announced "Learn More link" without any additional context. Because the phrase "Learn More" in isolation conveys no information about the specific content, product, or page to which the link leads, Ms. Jenkins was unable to determine whether this link would be relevant to her product search or worth following. The use of generic, context-free link text such as "Learn More," "Click Here," or "Read More" is a well-documented accessibility failure that disproportionately burdens screen reader users, who often navigate websites by tabbing through links in isolation rather than reading the entire page sequentially. This barrier added to the cumulative difficulty Ms. Jenkins encountered in attempting to navigate the Website and locate her desired products.

38. Empty Form Labels, Missing Form Labels, and Multiple Form Labels (WCAG 2.1 Success Criteria 1.3.1, 4.1.2) — The Oakley Men's Sunglasses product page (https://www.ashford.com/products/oakley-oo9081-26-203-28) contained five (5) empty form labels, one (1) missing form label, and four (4) instances of multiple form labels on a single control, constituting violations of WCAG 2.1 Success Criterion 1.3.1 (Information and Relationships), which requires that information and relationships conveyed through presentation be programmatically determinable, and Success Criterion 4.1.2 (Name, Role, Value), which requires that form controls have programmatically determinable names. Ms. Jenkins encountered these barriers on March 17, 2026, and again on May 10, 2026, when she attempted to configure and add the Oakley sunglasses to her shopping cart. The product page contained form fields for selecting product options — including size, color variant, and quantity — but when Ms. Jenkins's screen reader reached each of these form controls, NVDA either announced an empty label (voicing nothing for the form field's purpose), failed to announce any label at all, or became confused by the presence of multiple labels for a single control. As a result, Ms. Jenkins was completely unable

to determine what each form control represented — she could not tell whether she was selecting a color, a size, a lens type, or a quantity — and therefore could not meaningfully configure her order. This barrier directly prevented Ms. Jenkins from adding the Oakley OO9081-26-203-28 sunglasses to her cart and completing her purchase, because she had no way of knowing what she was selecting or whether she had properly configured the order.

39. Broken ARIA References (WCAG 2.1 Success Criteria 1.3.1, 4.1.2) — The Oakley Men's Sunglasses product page contained seven (7) broken ARIA references, in which ARIA attributes (such as aria-labelledby, aria-describedby, or aria-controls) referenced element IDs that did not exist on the page, constituting violations of WCAG 2.1 Success Criteria 1.3.1 and 4.1.2. ARIA (Accessible Rich Internet Applications) attributes are coding mechanisms used to convey the purpose, state, and relationships of interactive elements to assistive technologies; when an ARIA attribute references an element ID that does not exist in the page's DOM, the assistive technology cannot resolve the reference and cannot convey the intended information to the user. Ms. Jenkins encountered these broken references on March 17 and May 10, 2026, when navigating the Oakley product page. On each occasion, NVDA emitted error tones and announced error messages when encountering the broken ARIA references, rather than voicing the intended roles, states, or descriptions of the interactive elements on the product page. As a direct result, Ms. Jenkins was unable to understand the purpose or state of the interactive elements on the product page — including buttons, selectors, and dynamic content regions — and was consequently unable to use those elements to evaluate the product or place an order.

40. Invalid aria-owns Attributes Referencing Non-Existent Element IDs (WCAG 2.1 Success Criterion 1.3.1) — Approximately 1,985 pages of www.ashford.com — virtually the entire Website — contain aria-owns attributes that reference element IDs "predictive-search-results" and

"country-results" that do not exist on the target pages, constituting a systematic violation of WCAG 2.1 Success Criterion 1.3.1 (Information and Relationships). The aria-owns attribute is used to define ownership relationships between elements in the accessibility tree; when it references non-existent element IDs, the accessibility tree is corrupted, causing screen readers to malfunction and misrepresent the structure of the page to the user. Ms. Jenkins encountered this barrier on all three of her visits to the Website, across every page she visited — including the homepage, the Oakley product page, and all five brand collection pages. On each page, NVDA announced navigation landmark errors and in some instances emitted error tones when attempting to parse the page's landmark structure; in other instances, NVDA's announcement of page regions and navigation landmarks was entirely inconsistent, making it impossible for Ms. Jenkins to form a reliable mental model of the page structure or to navigate efficiently using NVDA's landmark navigation commands. This barrier pervasively degraded the quality of Ms. Jenkins's screen reader experience across the entire Website throughout all three of her visits.

41. Nested role=button Inside role=button (WCAG 2.1 Success Criterion 4.1.2, HTML5) — On the Website's homepage, at approximately Line 22585, an element with role=button was nested inside another element with role=button, in violation of WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value) and the HTML5 specification, which prohibits interactive elements from being nested within other interactive elements. This structural coding error directly impairs the ability of screen readers to correctly announce and handle the nested controls, because the screen reader must determine which element is the actual interactive button and how the two nested roles relate to each other. Ms. Jenkins encountered this barrier on March 19, 2026, and May 10, 2026, when she attempted to use the homepage search function and other homepage interactive features. When NVDA reached the nested button element, it announced incomplete and inconsistent control

information — sometimes announcing only one of the two nested roles and omitting the other, and sometimes behaving unpredictably in ways that prevented Ms. Jenkins from understanding how to interact with the control. This barrier contributed to Ms. Jenkins's inability to effectively use the Website's search function and homepage interactive elements to locate her desired products.

42. Nested Element with tabindex Inside role=button (WCAG 2.1 Success Criterion 4.1.2, HTML5) — On the Website's homepage, at approximately Line 22585 (the same element described in the preceding paragraph), an element with a tabindex attribute was nested inside an element with role=button, creating an additional accessibility violation. An element with a positive or zero tabindex value is focusable, and nesting a focusable element inside a role=button element creates an ambiguous and non-conformant interactive control that screen readers cannot reliably interpret. When Ms. Jenkins navigated the homepage using NVDA's tab key navigation, this nested element created additional unpredictable behavior — NVDA's announcement of the control's purpose and activation method was inconsistent, and in some instances the nested tabindex element captured focus in ways that disrupted the expected tab order and prevented Ms. Jenkins from progressing through the page's interactive controls in a predictable manner. This compound error at Line 22585 of the homepage caused repeated navigational confusion during Ms. Jenkins's visits on March 19 and May 10, 2026.

43. role=list Elements Not Containing role=listitem Children (WCAG 2.1 Success Criterion 1.3.1, HTML5 ARIA 1.2) — On the Website's homepage, at approximately Lines 29830 and 29982, elements with role=list were present without any direct role=listitem children, in violation of WCAG 2.1 Success Criterion 1.3.1 and the ARIA 1.2 specification, which requires that list roles contain the appropriate child roles. When a container element is assigned role=list but does not contain role=listitem children, the screen reader announces the presence of a list but is unable to

enumerate its items or convey the list's content as structured list data. Ms. Jenkins encountered this barrier on March 17, 2026, and on subsequent visits when navigating the homepage. When NVDA reached these list container elements, it announced "list" but was unable to voice any list items as discrete list entries; the content was accordingly not conveyed to Ms. Jenkins as organized, navigable list content, which degraded her ability to understand the structure of the homepage and navigate its content efficiently.

44. li Elements Outside ol/ul Containers (WCAG 2.1 Success Criterion 1.3.1) — Approximately 1,967 pages of www.ashford.com contain li (list item) elements that appear outside of properly structured ol (ordered list) or ul (unordered list) parent containers, in violation of WCAG 2.1 Success Criterion 1.3.1 (Information and Relationships), which requires that the structure and relationships conveyed through visual presentation be programmatically determinable. List items that appear outside of proper list containers are not recognized as list content by screen readers, causing the screen reader to announce them as plain text rather than as discrete, navigable list items. Ms. Jenkins encountered this barrier pervasively on the homepage, on brand collection pages, and on product pages during all three of her visits. Because of this error, NVDA did not announce product listings, navigation items, and other content as organized list data; instead, the items were announced as undifferentiated text, making it significantly harder for Ms. Jenkins to understand the page's structure, distinguish between individual products, and navigate among the product listings on collection pages. This barrier substantially impaired Ms. Jenkins's ability to browse and compare the watch products she sought to evaluate.

45. Data Tables Without th Header Elements (WCAG 2.1 Success Criterion 1.3.1, Failure F91) — Two pages of the Website — the privacy policy page (at approximately Line 19364/19979) and the shipping policy page (at approximately Line 19279) — contain data tables that lack properly

marked th (table header) elements, constituting violations of WCAG 2.1 Success Criterion 1.3.1 and Failure F91, which provides that using the th element to label tables without proper scoping fails to satisfy Success Criterion 1.3.1. When data tables are rendered without properly marked header cells, screen readers cannot convey the relationships between table headers and data cells — a critical function for understanding structured tabular information. Ms. Jenkins encountered this barrier on May 10, 2026, when she consulted the privacy policy and shipping policy pages in order to independently verify the warranty terms, return policy, and shipping details she needed to confirm before proceeding with a purchase. When NVDA reached the data tables on these pages, it announced the table cells as isolated data values without identifying the column or row headers to which each cell corresponded, making the warranty and shipping information tables effectively incomprehensible. As a direct result, Ms. Jenkins was unable to independently verify the return policy, warranty terms, or shipping charges applicable to her intended purchase — information she required before feeling confident committing to a transaction — and this barrier contributed to her inability to complete a purchase on May 10, 2026.

46. Pages with Empty-String href/src Attributes (WCAG 2.1 Success Criterion 2.1) — Approximately 186 pages of www.ashford.com contain hyperlinks or resource references with empty string href or src attributes, constituting violations of applicable WCAG 2.1 guidelines. Links with empty href attributes are ambiguous and often unresolvable, causing screen readers to announce them as broken or destination-less links, which creates navigational errors and confusion for screen reader users. Ms. Jenkins encountered broken links with empty href attributes on the homepage and on major brand collection pages during her visits on March 17 and March 19, 2026. When NVDA reached these empty-href links, it either announced them as "link" with no destination text, announced navigation errors, or behaved inconsistently in a manner that disrupted

Ms. Jenkins's ability to maintain her position and orientation within the page. The prevalence of empty-href broken links across 186 pages added to the cumulative barrier that made it impossible for Ms. Jenkins to reliably navigate the Website and locate her desired products.

47. Broken Same-Page Anchor Link (id=swym-wishlist) — On the Website's homepage, at approximately Lines 20233 and 22585, a same-page anchor link referenced a target element with the ID "swym-wishlist" that did not exist in the page's DOM. When a same-page anchor link references a non-existent target ID, the browser cannot scroll to or focus the referenced element, and screen readers announce a navigation error. Ms. Jenkins encountered this broken anchor link on March 17, 2026, and on each subsequent visit to the homepage. When NVDA attempted to process the broken same-page anchor, it announced a navigation error and failed to navigate to the referenced section of the page, causing momentary confusion about her position within the page and the structure of the homepage's content. While this specific barrier is more discrete than others described herein, it contributed to the overall pattern of broken navigational structures that made the Website unreliable and confusing to navigate using NVDA.

48. Very Low Contrast Text (WCAG 2.1 Success Criterion 1.4.3) — The WAVE audit of the Oakley Men's Sunglasses product page identified twenty-six (26) very low contrast errors — text elements on the product page with foreground-to-background color contrast ratios below the 4.5:1 minimum required by WCAG 2.1 Success Criterion 1.4.3 (Contrast — Minimum) for normal-sized body text. While contrast errors are often categorized as primarily affecting low-vision users who retain some residual vision rather than fully blind users, they are particularly significant in the context of Ms. Jenkins's condition: Retinitis Pigmentosa causes progressive peripheral vision loss while initially preserving some central vision; users in the earlier stages of legal blindness may retain enough residual central vision to perceive high-contrast text but be completely unable

to read low-contrast text. The twenty-six contrast failures on the Oakley product page — appearing on price information, product description text, and other critical product details — compounded the other barriers on that page by ensuring that even the limited visual perception Ms. Jenkins retains could not be used to supplement her screen reader's output when evaluating the product she sought to purchase.

49. Redundant Links, Orphaned Form Labels, and Duplicate Alt-Text Images (WCAG 2.1 Success Criteria 2.4.4, 1.3.1) — The WAVE audit of the Oakley product page identified nineteen (19) redundant links (multiple links with identical accessible names pointing to the same destination), one (1) instance of a nearby image with the same alt text as a redundant link, and two (2) orphaned form labels (label elements that were present in the page's HTML but not properly associated with any form control). WCAG 2.1 Success Criterion 2.4.4 (Link Purpose — In Context) requires that the purpose of links be determinable; when multiple links with identical names exist on a page, screen reader users who navigate through a link list cannot distinguish between them or determine which to follow. The orphaned form labels — labels that were read by NVDA but associated with no corresponding form control — caused NVDA to announce label text that appeared to describe a form field but served no functional purpose, creating confusion about the presence and identity of form controls on the product page. The duplicate alt-text image caused NVDA to announce identical descriptions for two different product images, providing no way for Ms. Jenkins to distinguish between the two images and understand what each depicted. These compound errors on the Oakley product page created additional layers of screen reader confusion that further impeded Ms. Jenkins's ability to evaluate the sunglasses and configure a purchase.

50. Spelling Errors on 141 Pages (WCAG 2.1) — The SortSite audit identified spelling errors on 141 pages of www.ashford.com. While spelling errors are not themselves categorized as WCAG Success Criterion violations in the traditional accessibility taxonomy, they are a recognized quality issue that disproportionately affects screen reader users. NVDA and JAWS rely on text-to-speech engines that use phonetic rules to pronounce words; when text contains spelling errors, the text-to-speech engine may mispronounce the misspelled word in ways that are unintelligible or misleading, degrading Ms. Jenkins's ability to correctly understand product names, descriptions, prices, and navigation labels on those 141 pages. This barrier contributed to the overall degradation of Ms. Jenkins's experience on the Website.

51. Pages Loading as Blank for Certain Configurations (WCAG 2.1) — The SortSite audit identified 1,985 pages of www.ashford.com that loaded as blank — displaying no content — for certain screen reader and browser configurations tested by the audit tool. This barrier, affecting virtually the entire Website, prevented Ms. Jenkins from accessing substantial portions of the Website in certain NVDA browsing modes and configurations. When a screen reader navigating in a particular mode or configuration encounters a page that loads as blank — with no DOM content rendered — the user receives no information about the page's content whatsoever, and is given no indication of whether the page simply failed to load, whether the content is dynamically rendered, or whether there is a fundamental compatibility issue with the Website. For Ms. Jenkins, encountering blank pages in certain NVDA configurations meant that significant portions of the Website were entirely inaccessible depending on how she attempted to access them, further compounding the barriers described above.

**F. Readily Achievable Barrier Removal**

52. The accessibility barriers described herein can be remediated through the implementation of established, well-documented, and widely available coding practices. Conformance with WCAG 2.1 Level AA is achievable through standard software development practices, including: adding descriptive alt text attributes to all non-decorative image elements; implementing proper accessible names for all hyperlinks, buttons, and form controls; correcting ARIA attribute references to ensure they reference valid and existing element IDs; removing or correcting invalid aria-owns attributes; replacing empty form labels with descriptive label text properly associated with corresponding form controls; correcting improper nesting of interactive elements; restructuring HTML list elements to use proper ol/ul/li hierarchy; adding th header elements to data tables; replacing empty-string href/src attributes with valid link targets or removing them; correcting same-page anchor references to existing target elements; improving text-to-background color contrast ratios; and correcting the coding errors that cause pages to load as blank in certain screen reader configurations.

53. Barrier removal through implementation of the measures described above is "readily achievable" within the meaning of 42 U.S.C. § 12182(b)(2)(A)(iv), because it can be accomplished without significant difficulty or expense given Defendants' resources and the nature of the measures required. Defendants operate a major national e-commerce platform generating substantial revenue from thousands of transactions per day; the cost of engaging web accessibility professionals to audit and remediate the Website is a small fraction of Defendants' revenues and operational expenses. Moreover, website accessibility remediation is widely practiced in the e-commerce industry, and experienced accessibility consultants, automated testing tools, and remediation frameworks are readily available. The barriers at issue are not the result of technical limitations inherent in the nature of e-commerce but rather the product of coding choices that failed

to implement established accessibility standards — choices that can be corrected by qualified web developers. Defendants' failure to remove these barriers in the face of their known legal obligations reflects a choice, not a technical or economic necessity.

**G. Plaintiff's Standing and Intent to Return**

54. Plaintiff Angel Jenkins has standing to bring this action, including to seek prospective injunctive relief under Title III of the ADA and under the NYCHRL, pursuant to the framework established by the Second Circuit in Calcano v. Swarovski North America Ltd., 36 F.4th 68 (2d Cir. 2022), and its predecessor decisions. To establish standing for injunctive relief in an ADA website accessibility case, a plaintiff must plead: (1) a past injury — that she personally encountered a discriminatory condition; (2) that the discriminatory condition will continue — that it is reasonable to infer that she will again be subject to the same discrimination; and (3) intent to return — that she sincerely intends to return to the place of public accommodation and would do so if not for the discriminatory condition. Calcano, 36 F.4th at 75-76. The Second Circuit in Calcano further explained that "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location." Id. Unlike the plaintiffs in Calcano, whose complaints were dismissed for pleading "boilerplate" allegations devoid of specific facts, Ms. Jenkins's allegations are concrete, specific, and nonconclusory — she identifies the precise products she sought, the specific product pages she visited, the specific barriers she encountered on each occasion, and the specific reasons why no alternative retailer can meet her needs.

55. First, Plaintiff has suffered a concrete and particularized past injury on three specific, identified dates. On March 17, 2026, Ms. Jenkins attempted to access the Oakley Men's Sunglasses product page at https://www.ashford.com/products/oakley-oo9081-26-203-28 using NVDA and

was prevented from evaluating the sunglasses or completing a purchase because of the accessibility barriers described in Paragraph 29, including absent image alt text, empty form labels, broken ARIA references, and empty navigation link labels. On March 19, 2026, she returned to the Website to browse the Bulova, Citizen, Hamilton, Invicta, and Movado brand collection pages and was prevented from evaluating or comparing any of the watch products she sought because of the barriers described in Paragraph 30, including absent image alt text, links without accessible names, invalid aria-owns attributes, improperly nested interactive elements, and structural list errors. On May 10, 2026, she made a third attempt to access the Website, confirmed that no remediation had occurred, attempted to use the search function and to consult the policy pages, and was again prevented from completing any purchase because of the barriers described in Paragraph 31, including unstructured data tables, broken anchor links, and the persistence of all previously encountered barriers. On each visit, the barriers Ms. Jenkins encountered were not hypothetical or contingent — they were actual, specific, experienced barriers that prevented her from accomplishing specific commercial transactions she sought to complete.

56. Second, it is reasonable to infer that the discriminatory conduct will continue. The SortSite audit conducted on June 4, 2026 — approximately seven weeks after Ms. Jenkins's first visit to the Website — confirms that the accessibility barriers identified during her visits persist across 1,985 or more pages of the Website as of the date of this Complaint, with no evidence of any meaningful remediation having been undertaken during the intervening period. The systemic and pervasive nature of the barriers — spread across virtually the entire Website, affecting its core navigation, product images, form controls, and structural markup — is inconsistent with any ongoing or good-faith remediation effort. In the absence of a Court order requiring compliance, there is no reasonable basis to expect that Defendants will voluntarily remediate the Website. The persistence

of these barriers for at least seven weeks following Ms. Jenkins's first documented visit, during which time the Website continued to operate normally for sighted users while remaining effectively inaccessible to blind users such as Ms. Jenkins, supports a reasonable inference that the discriminatory condition will continue absent judicial intervention.

57. Third, it is reasonable to infer that Ms. Jenkins sincerely intends to return to www.ashford.com upon remediation of the accessibility barriers. Calcano, 36 F.4th at 75. Unlike the conclusory "boilerplate" standing allegations that the Second Circuit found insufficient in Calcano — where plaintiffs alleged only that they "intended to return" without identifying specific products, specific reasons for preferring that particular establishment, or specific reasons why no alternative establishment would serve them — Ms. Jenkins's intent to return is grounded in the following specific and nonconclusory facts: (a) She has visited www.ashford.com three times in under two months, demonstrating a persistent and recurring interest in the Website and its products; (b) She accesses the Website from her home at 228 West 124th Street, New York County, and the Website is accessible to her from her home at any time, placing the Website within convenient reach; (c) She has a specific, ongoing, and unmet desire to purchase the Oakley OO9081-26-203-28 sunglasses, which remain listed on the Website at the discounted price of $59.99, and which she has been unable to purchase solely because of the accessibility barriers; (d) She has a specific, ongoing, and unmet desire to browse and compare luxury timepieces from the Bulova, Citizen, Hamilton, Invicta, and Movado collections for personal use and as gifts, which she has been unable to do solely because of the accessibility barriers; (e) She has previously made purchases through Ashford.com and has a pre-existing familiarity with and preference for the Website's product selection and pricing; (f) The combination of Ashford.com's pricing (up to 80% below MSRP, with the specific Oakley model at 72% below MSRP), authenticity guarantee, multi-

year warranty, authorized-retailer status, and brand selection is unique — no accessible competing discount retailer offers an equivalent combination of these features; and (g) She has stated her intent to return to www.ashford.com immediately upon remediation of the accessibility barriers, and there is no accessible alternative website that would satisfy her specific purchasing needs.

58. The ADA expressly provides that a plaintiff "need not attempt to overcome an obvious barrier" to allege an injury in fact. Calcano, 36 F.4th at 76 (citing 42 U.S.C. § 12188(a)(1)). To the extent that the barriers on www.ashford.com made it obvious and predictable that Ms. Jenkins's attempts on May 10, 2026 would be as futile as her prior attempts — as the persistence of the same barriers confirmed — she was not required to continue attempting to overcome them in order to establish standing for prospective relief. See Andrews v. Blick Art Materials, LLC, 268 F. Supp. 3d 381, 393-95 (E.D.N.Y. 2017) (holding that the ADA applies to websites even without a nexus to a physical location, and that a plaintiff who has been deterred from accessing an inaccessible website has suffered an injury in fact under the ADA).

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated. Plaintiff proposes the following Class: All legally blind individuals in the United States who attempted to access www.ashford.com using screen-reading software and were denied full and equal access to the website's goods, services, privileges, advantages, and accommodations as a result of the accessibility barriers identified in this Complaint (the "Class"). Plaintiff also proposes the following Sub-Class: All legally blind individuals residing in the City of New York who attempted to access www.ashford.com using screen-reading software and were denied full and equal access to the

website's goods, services, privileges, advantages, and accommodations as a result of the accessibility barriers identified in this Complaint (the "New York City Sub-Class").

60. Numerosity: The proposed Class is so numerous that joinder of all members is impracticable. There are approximately 7.6 million Americans with severe visual impairments, of whom a significant number rely on screen-reading software to access the internet. Based on the nationwide scope of Defendants' e-commerce operations and the pervasive nature of the accessibility barriers documented herein — affecting 1,985 or more pages of the Website — it is reasonable to infer that at least hundreds, and likely thousands, of legally blind individuals have attempted to access www.ashford.com and have encountered the accessibility barriers described in this Complaint. The precise number of Class members is unknown but can be ascertained through Defendants' website access logs and related records.

61. Commonality: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. Common questions include, without limitation: (a) whether the accessibility barriers documented in this Complaint constitute violations of Title III of the ADA, the NYSHRL, and the NYCHRL; (b) whether Defendants have failed to make the Ashford.com website readily accessible to and independently usable by individuals who are blind or visually impaired; (c) whether barrier removal is "readily achievable" within the meaning of the ADA; (d) whether Defendants' website design and maintenance policies and practices constitute intentional discrimination under the NYSHRL and NYCHRL; and (e) what injunctive relief is necessary and appropriate to bring www.ashford.com into conformance with applicable accessibility standards.

62. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff is legally blind, relies on screen-reading software to access the internet, and attempted to access www.ashford.com

on multiple occasions, encountering the same accessibility barriers that Class members encounter. The relief sought by Plaintiff — injunctive relief requiring remediation of the Website to conform with WCAG 2.1 Level AA guidelines — is the same relief sought on behalf of the Class.

63. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel with extensive experience in ADA accessibility litigation, disability civil rights law, and class action practice. Plaintiff has no interests antagonistic to those of the Class, and there are no conflicts of interest between Plaintiff and other Class members.

64. Rule 23(b)(2) Requirements: Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole. Title III of the ADA provides only injunctive relief as a remedy in private lawsuits; accordingly, the Class is properly certified under Rule 23(b)(2) for purposes of Plaintiff's ADA claim. For purposes of Plaintiff's state and city law claims, certification is also appropriate under Rule 23(b)(3) because common questions of law and fact predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65. In the alternative, this Court may certify a narrower issue class pursuant to Rule 23(c)(4) limited to the question of whether the accessibility barriers on www.ashford.com violate Title III of the ADA and applicable state and city law, with any individual damages claims to be addressed separately.

## CAUSES OF ACTION

## COUNT I

**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq.**
(On Behalf of Plaintiff and the Class)

66. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

67. Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation. 42 U.S.C. § 12182(a). A "place of public accommodation" includes a "sales establishment" and any facility of a private entity whose operations affect commerce. 42 U.S.C. § 12181(7)(E). Defendants' commercial website, www.ashford.com, through which Defendants offer goods for retail sale to the general public, constitutes a place of public accommodation within the meaning of Title III. See Andrews v. Blick Art Materials, LLC, 268 F. Supp. 3d 381, 393-95 (E.D.N.Y. 2017).

68. Defendants have violated and continue to violate Title III of the ADA by: (a) failing to maintain the Ashford.com website in a manner that is accessible to and independently usable by individuals who are blind or visually impaired, in violation of 42 U.S.C. § 12182(a); (b) failing to provide equal access to the goods, services, facilities, privileges, advantages, and accommodations of Ashford.com to individuals who are blind or visually impaired, in violation of 42 U.S.C. § 12182(b)(1)(A)(i)-(iii); (c) failing to make reasonable modifications to their website policies, practices, and procedures to afford equal access to blind and visually impaired individuals, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii); and (d) failing to take readily achievable steps to remove the accessibility barriers identified in this Complaint, in violation of 42 U.S.C. § 12182(b)(2)(A)(iv).

69. As a direct and proximate result of Defendants' violations of Title III of the ADA, Plaintiff and Class members have been denied full and equal access to the goods, services, and commercial opportunities available on www.ashford.com, and have suffered and continue to suffer injury,

discrimination, and frustration of their civil rights. Unless Defendants are enjoined from continuing their discriminatory practices and required to bring www.ashford.com into conformance with WCAG 2.1 Level AA guidelines, Plaintiff and Class members will continue to be denied equal access to the Website. Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.505, and to attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 12205.

**COUNT II**
**Violations of the New York State Human Rights Law,**
**N.Y. Exec. Law §§ 290 et seq.**
(On Behalf of Plaintiff and the Class)

70. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

71. The New York State Human Rights Law prohibits discrimination on the basis of disability by any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, resort, or amusement. N.Y. Exec. Law § 296(2)(a). The NYSHRL defines "disability" to include any physical condition, impairment, or disorder that prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques. N.Y. Exec. Law § 292(21). Plaintiff's Retinitis Pigmentosa, which causes severe bilateral vision loss satisfying legal blindness criteria, constitutes a "disability" within the meaning of the NYSHRL. Defendants' website, www.ashford.com, constitutes a "place of public accommodation" within the meaning of the NYSHRL as a place that is open to, accepted by, or solicited from the general public for commercial purposes.

72. Defendants have violated the NYSHRL by: (a) refusing, withholding from, and denying to Plaintiff and Class members the accommodations, advantages, facilities, and privileges available

to the general public through the Ashford.com website because of their disability; (b) failing to provide reasonable accommodation to enable Plaintiff and Class members to enjoy the goods, services, facilities, privileges, advantages, and accommodations of the Ashford.com website on an equal basis with non-disabled users; and (c) maintaining a website that is inaccessible to blind and visually impaired users in a manner that constitutes discrimination on the basis of disability within the meaning of the NYSHRL. As a direct and proximate result of Defendants' violations of the NYSHRL, Plaintiff and Class members have suffered, and continue to suffer, injury, damages, discrimination, and the deprivation of their right to equal access to a place of public accommodation. Plaintiff is entitled to compensatory damages, injunctive relief, and attorneys' fees and costs pursuant to N.Y. Exec. Law § 297.

## COUNT III

**Violations of the New York City Human Rights Law,**
**N.Y.C. Admin. Code §§ 8-101 et seq.**
(On Behalf of Plaintiff and the New York City Sub-Class)

73. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

74. The New York City Human Rights Law provides the broadest civil rights protections of any jurisdiction in the United States and is to be construed liberally for the accomplishment of its uniquely broad and remedial purposes. N.Y.C. Admin. Code § 8-130. The NYCHRL prohibits any owner, operator, or lessor of any place of public accommodation from discriminating on the basis of disability. N.Y.C. Admin. Code § 8-107(4). "Disability" is defined under the NYCHRL to include any physical, medical, mental, or psychological impairment resulting from bodily injury, birth defect, or illness — expressly including impairments that limit a major life activity such as seeing. Plaintiff's Retinitis Pigmentosa, causing severe bilateral vision loss amounting to legal

blindness, constitutes a "disability" within the meaning of the NYCHRL. A "place of public accommodation" under the NYCHRL includes any provider of goods, services, or accommodations to the public, and includes commercial websites that are accessible to and transact with New York City residents — such as the Ashford.com website, which Plaintiff accessed from her home in New York County and through which Defendants derive substantial revenue from New York City consumers.

75. Defendants have violated the NYCHRL by: (a) discriminating against Plaintiff and members of the New York City Sub-Class by refusing, withholding, and denying them the full and equal enjoyment of the goods, services, and privileges of the Ashford.com website because of their disability; (b) failing to provide reasonable accommodations — specifically, an accessible and usable website — that would enable Plaintiff and Sub-Class members to enjoy equal access to the goods, services, and commercial opportunities available through Ashford.com; and (c) engaging in conduct that constitutes unlawful discrimination against persons with disabilities in the operation of a public accommodation, in violation of N.Y.C. Admin. Code § 8-107(4). As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiff and New York City Sub-Class members have suffered and continue to suffer injury, discriminatory exclusion from commerce, emotional distress, and the deprivation of their civil rights. Plaintiff is entitled to compensatory damages, civil penalties (including minimum statutory damages per discriminatory act), punitive damages, injunctive relief, and attorneys' fees and costs pursuant to N.Y.C. Admin. Code §§ 8-120 and 8-502.

## COUNT IV
**Declaratory Relief**
(On Behalf of Plaintiff and the Class)

76. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

77. An actual controversy exists between Plaintiff and Class members, on the one hand, and Defendants, on the other hand, with respect to Defendants' obligations under Title III of the ADA, the NYSHRL, and the NYCHRL to provide a fully accessible and independently usable commercial website to blind and visually impaired persons. Plaintiff contends that Defendants have violated and continue to violate these obligations. Defendants, upon information and belief, deny any such violation. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a declaration that the accessibility barriers on www.ashford.com violate Title III of the ADA, the NYSHRL, and the NYCHRL, and that Defendants are obligated to remediate those barriers in conformance with WCAG 2.1 Level AA guidelines within a time period to be set by the Court.

**COUNT V**
**Injunctive Relief Under 42 U.S.C. § 12188**
**N.Y.C. Admin. Code § 8-502**
(On Behalf of Plaintiff and the Class)

78. Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

79. As set forth in the preceding Counts, Defendants have violated and continue to violate Plaintiff's and Class members' rights under Title III of the ADA, the NYSHRL, and the NYCHRL by maintaining a commercial website that is not accessible to or independently usable by blind and visually impaired persons. Plaintiff and Class members have no adequate remedy at law for the continuing violations of their civil rights — the ADA provides only injunctive relief in private actions, and the ongoing nature of the accessibility barriers means that Plaintiff and Class members

will continue to be denied equal access to Defendants' goods and services unless and until a court orders Defendants to remediate the Website.

80. Plaintiff and the Class will suffer irreparable harm absent injunctive relief because: (a) they will continue to be denied equal access to the goods, services, and commercial opportunities available through the Ashford.com website; (b) they will continue to be subjected to the indignity and stigma of discriminatory exclusion from a place of public accommodation; (c) they will continue to be deprived of the ability to purchase specific products — including the Oakley OO9081-26-203-28 sunglasses and luxury timepieces from the Bulova, Citizen, Hamilton, Invicta, and Movado collections — available at prices and under terms uniquely available through Ashford.com; and (d) the balance of hardships weighs heavily in favor of injunctive relief, as requiring Defendants to make their website accessible through standard coding practices imposes minimal burden compared to the ongoing harm to Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ANGEL JENKINS, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants LUXI GROUP, LLC and UNITED TIME GROUP, LLC, d/b/a ASHFORD.COM, and that the Court grant the following relief:

**A.** A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and N.Y.C. Admin. Code § 8-502(a) requiring Defendants, within a reasonable time to be set by the Court (not to exceed one hundred eighty (180) days from the date of the Court's order), to make www.ashford.com fully accessible to and independently usable by blind and visually impaired persons, in conformance with WCAG 2.1 Level AA guidelines, and specifically to: (i) add descriptive and meaningful alternative text to all non-decorative image elements;

(ii) provide accessible names for all hyperlinks, buttons, and form controls; (iii) correct all broken ARIA attribute references; (iv) remove or correct invalid aria-owns attributes; (v) associate all form labels properly with their corresponding form controls; (vi) correct all improperly nested interactive elements; (vii) restructure HTML list elements to use proper ol/ul/li hierarchy; (viii) add th header elements to all data tables; (ix) replace all empty-string href/src attributes; (x) correct all broken same-page anchor references; (xi) increase text-to-background color contrast ratios to meet WCAG 1.4.3 minimums; and (xii) correct all coding errors identified in the SortSite and WAVE audits that cause pages to load as blank in certain screen reader configurations;

**B.** A declaration pursuant to 28 U.S.C. § 2201 that the accessibility barriers on www.ashford.com violate Title III of the ADA, 42 U.S.C. § 12181 et seq., the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq., and that Defendants are legally obligated to provide full and equal access to www.ashford.com to blind and visually impaired persons;

**C.** An order retaining jurisdiction over this action and requiring Defendants to submit to the Court, within thirty (30) days of completing remediation, a report from a qualified website accessibility expert confirming that www.ashford.com has been brought into conformance with WCAG 2.1 Level AA guidelines, and retaining jurisdiction to monitor and enforce ongoing compliance;

**D.** Compensatory damages for Plaintiff and Class members for all harm caused by Defendants' violations of the NYSHRL and NYCHRL, in amounts to be proven at trial;

**E.** Civil penalties and punitive damages as permitted by N.Y.C. Admin. Code §§ 8-120(8) and 8-502(a), in amounts to be determined by the jury and/or the Court;

**F.** Reasonable attorneys' fees, litigation expenses, and costs of this action pursuant to 42 U.S.C. § 12205, N.Y. Exec. Law § 297(10), and N.Y.C. Admin. Code § 8-502(g);

**G.** Such other and further relief as this Court deems just, proper, and equitable, including but not limited to any other relief available under the ADA, NYSHRL, or NYCHRL.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff ANGEL JENKINS hereby demands a trial by jury on all issues so triable, including but not limited to all claims for compensatory damages, punitive damages, and civil penalties under the New York State Human Rights Law and the New York City Human Rights Law.

Dated: June 8, 2026
New York, New York

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
By: *<u>/s/ Robert L. Schonfeld</u>*
Robert Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
Tel: (212) 227-5700
Rschonfeld@employeejustice.com